Detinue for negro slave Jock. Plea, the general issue. Plaintiff claimed the slave by virtue of a bill of sale from James Smith to himself, made 20 December, 1802; at the time of this sale plaintiff was an infant; this suit was commenced before he came of age. The defendant claimed also under a bill of sale from James Smith, and the following facts appeared in evidence: George Moore, father of the plaintiff, was much indebted, and being in possession of a negro girl, Kate, declared his intention to exchange her with Smith for Jock and to procure from Smith a bill of (556) sale for Jock to his son, the plaintiff; he assigned as a reason for this that he could not pay his creditors and that there were some of them he did not mean to pay; that if he made the exchange Jock might be retained by his son and be of service to him (George) during his life, and afterwards to his son. George Moore did make the exchange, and Smith gave the bill of sale under which plaintiff claimed. A few days after his exchange one Pittman obtained two judgments against George Moore for £ 172, and the executions issuing thereon were returned nulla bona;
after this Pittman purchased Jock of George Moore for a valuable consideration and sold him to James Smith before mentioned, for a valuable consideration, and Smith sold him to the defendant for a valuable consideration. The defendant contended that the plaintiff's claim was founded in fraud. Another point made in the case was whether the defendant might give in evidence a registered copy of the deed from Willis to George Moore.
Daniel, J., charged the jury that if George Moore designed and intended to defraud his creditors or subsequent purchasers when he made the exchange with Smith, yet if Smith did not know of his design, and was not intentionally aiding him in the plan, then the defendant would not be estopped by the deed of sale from Smith to the plaintiff, but would be entitled to consider the sale from George Moore to Pittman as good against the plaintiff; and the after circumstance of the negro Jock having been sold to Smith, and then to the defendant, could not prevent the defendant availing himself of all the rights which the law gave to Pittman, and if Smith was not concerned in the fraud (if any was committed) the defendant was not estopped by Smith's deed to the plaintiff. Verdict for the defendant; new trial refused, judgment and appeal.
Smith was a purchaser for a valuable consideration from Pittman, who was in possession of the negro under *Page 311 
a deed from George Moore. Pittman was a creditor of George when the exchange took place, and one of those whom the conveyance to John Moore was designed to defraud; it was consequently void against him, and he might have levied his execution on the property and had it sold. But if, instead of so doing, he thought proper to take it in part satisfaction of his debt, it was doing, by the agreement of the parties, what the law would have enforced in another mode. The act against fraudulent conveyances was intended for the protection of creditors and others having actions and debts against the fraudulent alienor, and when it makes the conveyance valid against him it is that he may derive no benefit from the property in opposition to their interests; but when they claim through him, the spirit of the act is obeyed. Pittman has a double claim, as a creditor and as a subsequent purchaser for a valuable consideration, opposed only by the claim of John Moore, the child of George, and a volunteer, who can only be favored at the expense of a claim more strong and meritorious.
This is considering the case as if George Moore, instead of procuring a deed from Smith to John Moore, had first taken a deed to himself and then conveyed to John; and this view of the case places all the claimants under Pittman upon safe ground. As to the objection that Smith, and consequently his vendor, is estopped from denying the title of John Moore, it is believed that the doctrine of estoppel has no bearing upon this case. Willis does not deny that Smith made a deed to John Moore, but contends that the title conveyed by it is at an end by the operation of law and the act of the parties. While that title subsisted it would not have been competent for him or Smith to deny it, but the property being restored to the purposes from which the deed attempted to divert it, the estoppel is at an end. So in an ejectment by landlord against a tenant whose lease is expired, the tenant is not estopped (558) from showing that the landlord's lease is expired. 4 Term, 682.
On the other question in this case it is clear that under the circumstances stated a registered copy of the deed to George Moore from Willis was proper evidence, the defendant not having, and having no right to the original.