410 So.2d 1274 (1982)
Otha J. CUTRIGHT, Plaintiff-Appellant,
v.
Harold E. WILSON, Defendant-Appellee.
No. 8588.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
*1275 Lowther & Boone, William Boone, Many, for plaintiff-appellant.
Davis & Simmons, Kenneth N. Simmons, Many, for defendant-appellee.
Before CULPEPPER, FORET and CUTRER, JJ.
FORET, Judge.
Otha J. Cutright (Plaintiff) brought this action to correct the description of a certain tract of land contained in a written act of sale executed by him as vendor and by defendant, Harold Wilson, as vendee. Defendant reconvened, seeking to have the sale set aside and for a full refund of that portion of the purchase price he had paid plaintiff. Defendant also sought to recover damages from plaintiff for breach of warranty of title and for eviction. James R. Cole, Clauriste H. Byles, and Joseph L. Lowrey (intervenors) intervened, seeking to have plaintiff's action dismissed.
Trial of plaintiff's action and the incidental actions of the other parties resulted in a judgment in favor of defendant and intervenors and against plaintiff, dismissing plaintiff's action with prejudice. The trial court also rendered judgment in favor of defendant and against plaintiff setting aside the alleged sale between them and ordering plaintiff to return that portion of the purchase price (both principal and interest) paid by defendant. In addition, the trial court also ordered plaintiff to pay $10,500.00 to defendant for improvements defendant had made to the tract of land. Finally, the trial court rendered judgment *1276 in favor of plaintiff and against intervenors rescinding, annulling, and revoking certain acts of sale by which intervenors claim to have acquired the ownership of the tract of land described in the act of sale executed by plaintiff and defendant.
Plaintiff has brought this suspensive appeal from that portion of the trial court's judgment rendered against him and raises the following issues:
(1) Whether the trial court committed manifest error in finding that plaintiff and defendant had failed to agree on the specific tract of land to be sold;
(2) If not, did the trial court commit manifest error in calculating the amount to be recovered by defendant from plaintiff for improvements defendant had made to the tract of land;
(3) Whether the trial court committed manifest error in deciding that plaintiff should be allowed no credit or adjustment for defendant's use of the land because of a lack of evidence of such use, rather than holding open or re-opening the case for the introduction of additional evidence on this issue.
Intervenors answered the appeal, seeking to have the judgment of the trial court reversed and the validity of the sale between plaintiff and defendant upheld.

FACTS
Plaintiff and defendant executed a written act of sale on June 22, 1977, in which plaintiff agreed to transfer the ownership of a certain tract of land to defendant. The purchase price was set at $10,000.00, in payment of which defendant gave plaintiff $1,000.00 cash and agreed to pay the balance in twelve semi-annual installments of $896.25 each. The act of sale was in authentic form and it was recorded in the conveyance and mortgage records of Sabine Parish on August 30, 1977.[1] It contains the following description of the land sold:
"Commencing at the point where the West line of Section 22, Township 7 North, Range 11 West intersects the West right of way line of U. S. Highway 171 By-Pass (Truck Route), being an extension of Elizabeth Street, thence run Northwesterly along said West right of way line a distance of 250 feet for the point of beginning; thence run Northwesterly along said right of way line a distance of 210 feet; thence Southwesterly, at right angles to said right of way line a distance of 225 feet; thence in a Southeasterly direction 211.5 feet to a point on a line at right angles to said right of way which is 195 feet from the point of beginning; thence Northeasterly at right angles to the said right of way line a distance of 195 feet to the point of beginning containing 1.0 acres, more or less.
(Description furnished by Vendor)." (Emphasis ours.)
Plaintiff instituted this action on September 11, 1978, alleging that a mistake of fact existed between the parties with reference to the land allegedly sold and that this mistake was reflected in the description contained in the act of sale which is reproduced above. Plaintiff further alleged that the correct description was as follows:
"Commencing at the point where the West line of Section 22, Township 7 North, Range 11 West intersects the West right of way line of U.S. Highway 171 By-Pass (Truck Route), being an extension of Elizabeth Street, thence run Northwesterly along said West right of way line a distance of 250 feet to a point; thence run Northeasterly, at right angles to the said right-of-way line to the center of the right-of-way of U.S. Highway 171 for the point of beginning; thence run Northwesterly along the center of said right of way a distance of 210 feet, thence Southwesterly, at right angles to *1277 said right of way line a distance of 225 feet; thence in a Southeasterly direction 211.5 feet to a point on a line at right angles to said right of way which is 195 feet from the point of beginning; thence Northeasterly at right angles to the said right of way line a distance of 195 feet to the point of beginning, containing 1.0 acres, more or less." (Emphasis ours.)
The description in the act of sale places the east boundary of the tract of land allegedly sold at the west right-of-way line of U.S. Highway 171, while the description alleged to be correct by plaintiff places the east boundary at the center of the right-of-way. The description in the act of sale includes approximately one-third of an acre of land that plaintiff contends he never meant to sell, while the description alleged to be correct by plaintiff includes approximately one-third of an acre of land that lies beneath the highway and its right-of-way. Plaintiff sought to have the description contained in the act of sale reformed to conform to the description he alleged to be correct. He filed a notice of lis pendens on the day he instituted this action.
Defendant filed an exception in the trial court alleging that plaintiff was estopped by his own actions from contradicting or changing the description contained in the act of sale. Defendant alleged in his exception that the property description found therein had been furnished by plaintiff to his own attorney, who prepared the act of sale. Further, that the act of sale was in authentic form and was full proof of the agreement contained therein, and that parol evidence could not be admitted against or beyond the instrument. The trial court overruled the exception for reasons not found in the record.
Defendant then filed an answer and reconventional demand in which he denied the significant allegations of plaintiff's petition and then assumed the position of plaintiff-in-reconvention. Defendant alleged that it was his intention to buy and plaintiff's intention to sell one acre of usable land. He further alleged that plaintiff had conveyed the land described in the act of sale to him with full guaranty of warranty of title. Defendant sought to recover damages from plaintiff for breach of warranty and eviction which he alleged resulted from the institution of this action by plaintiff. He set his damages at $7,900.00, consisting of $7,500.00 he allegedly paid for dirt to fill in the land and $400.00 for culverts he installed on the land. In addition, defendant sought to have the sale set aside and for a complete and full refund of that portion of the purchase price he had paid plaintiff, including interest.
Intervenors filed a petition of intervention alleging that the ownership of the tract of land described in the act of sale had ultimately been conveyed to them in the following manner. First, defendant had conveyed the ownership of the tract of land to one Travis Bennett as evidenced by an instrument dated June 14, 1979 and properly recorded. Then, Travis Bennett had conveyed the ownership of the same tract of land to them as evidenced by an instrument dated November 2, 1979 and also properly recorded. Intervenors sought to have the validity of plaintiff's sale of the tract of land to defendant (as described in the act of sale executed by plaintiff and defendant) upheld and plaintiff's action dismissed.

PERFECTION OF THE CONTRACT OF SALE
Plaintiff contends that the trial court committed manifest error in finding that the parties had failed to reach an agreement on the object (the tract of land) to be sold.
LSA-C.C. Article 2439 provides:
"Art. 2439. Sale, definition
Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
LSA-C.C. Article 2456 provides:
"Art. 2456. Completion of contract by agreement as to object and price
*1278 Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
The evidence indicates that plaintiff was approached by defendant, who inquired as to the possibility of purchasing an acre of land from plaintiff for business purposes. He found unacceptable the first tract of land shown him by plaintiff. Defendant then stated that he wanted to purchase an acre adjacent to an arts and crafts shop located on the west side of U.S. Highway 171. Plaintiff advised defendant that this tract of land might contain less than an acre, but that if it contained an acre, he wanted $10,000.00 for it. Defendant expressed his willingness to pay this price and left. Plaintiff and his son-in-law then proceeded to measure this tract of land.
They used the center line of U.S. Highway 171 as the east boundary and planned to measure a square tract of land with each side approximately 210 feet long. In doing so, they discovered that a portion of such a tract would encroach upon other land owned by plaintiff, which he did not want to sell. They then shortened the south boundary of the proposed tract to 195 feet and extended the north boundary to 225 feet to avoid any encroachment onto plaintiff's other lands. Both plaintiff and defendant acknowledged that they had discussed this problem, but defendant testified it was his understanding that he would get an acre of usable land though he didn't know exactly where it would be located. He stated that he would not have purchased the acre described by plaintiff because approximately one-third of it was covered by the highway and its right-of-way. Defendant admitted that plaintiff had told him that he did not want to sell a portion of the tract of land that was later described in the act of sale.
Plaintiff testified that he never intended to sell any portion of his land that he claims was erroneously included in the act of sale. Plaintiff introduced in evidence certain notes he had made at the time he was negotiating with defendant. These clearly show that plaintiff intended to sell defendant an acre of land with the east boundary being the center line of the highway right-of-way. Plaintiff's attorney testified that his notes, made when plaintiff called to give him the description of the tract of land to be sold, placed the east boundary where plaintiff contends it should be. However, through error and inadvertence in preparing the act of sale, he placed the east boundary along the west edge of the highway right-of-way.
Plaintiff's son-in-law, Forrest Cooper, stated that he was present when plaintiff and defendant first discussed the possibility of defendant's purchasing some land from plaintiff. Cooper testified that it was his understanding that defendant wanted to purchase one acre. He also testified that plaintiff had indicated that he had no intention of selling that portion of his land which he contends was included in the act of sale erroneously.
We conclude that plaintiff intended to sell to defendant the tract of land containing one acre as described in his petition (noted above). Further, that plaintiff's attorney erroneously described, in the act of sale, the tract of land plaintiff intended to sell, such that the description included approximately one-third of an acre of land that plaintiff had no intention of selling. Finally, that defendant intended to buy one acre of usable land by the arts and crafts shop, and had no intention of buying an acre of land of which one-third of the area was covered by a highway and its right-of-way.
Our review of the record leads us to agree with the trial court's finding that plaintiff and defendant had failed to reach an agreement as to the object (the specific tract of land containing one acre) of their proposed sale. Thus, under the provisions of LSA-C.C. Article 2439 and 2456, no contract of sale was perfected by them.
*1279 Plaintiff's next contention is that he made a "sale per aversionem" to defendant of the tract of land alleged by him to be the tract that he and defendant had reached agreement on. This contention is without merit as we have found that plaintiff and defendant failed to agree on any specific tract of land.

INTERVENORS' CLAIM
Intervenors' first contention is that plaintiff and defendant had reached an agreement as to the object of their purported sale (which intervenors alleged to be the tract of land described in the act of sale) and the price therefor, and that a contract of sale had been perfected by them. For the reasons expressed above, we find no merit to this contention.
Intervenors' next contention is that plaintiff should be estopped from attacking the property description recited in the act of sale. Intervenors cite Leaveau v. Primeaux, 117 So.2d 304 (La.App.Orl.Cir.1959), in support of their contention. The decision in Leaveau was based mainly on principles set forth in Lewis v. King, 157 La. 718, 103 So. 19 (La.1925),[2] which were derived from a number of common law sources. Lewis stated on page 22 that:
"`Estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, in pais.' 21 C. J. p. 1059. There are a great many definitions of the term, but the authorities hold that estoppels preclude the assertion of fact, not law. Moore v. Willis, 9 N.C. 555.
"`Estoppel by warranty is an estoppel based on the principle of giving effect to the manifest intention of the grantor appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor from derogating from or destroying his own grant by any subsequent act.' 21 C.J. p. 1061; Condit v. Bigalow, 64 N.J.Eq. 504, 513, 54 A. 160.
It is a species of estoppel by deed. A party to a deed, and his privies, are estopped from denying the truth of any material fact asserted in it. Fields v. Willingham, 49 Ga. 344; McAdams v. Bailey, 169 Ind. 518, 72 N.E. 1057, 13 L.R.A., (N.S.) 1003, 124 Am.St.Rep. 240; Cornelius v. Kinnard, 157 Ky. 51, 162 S.W. 524.'
It would appear that the doctrine of estoppel by deed is applicable and that plaintiff is precluded from attacking the property description in the act of sale. However, the record shows that plaintiff filed a notice of lis pendens containing all of the required information in the mortgage records of Sabine Parish on September 11, 1978. See LSA-C.C.P. Articles 3751 and 3752. The notice of lis pendens describes only that portion of the tract of land described in the act of sale, which plaintiff contended was erroneously included therein. However, the notice of lis pendens does mention the judicial district in which plaintiff's action was filed and the docket number assigned to it. Defendant's reconventional demand was filed therein on October 27, 1978.
The instrument evidencing the sale of the disputed tract of land by defendant to Travis Bennett was executed some eight months after defendant had filed his reconventional demand. Further, the instrument evidencing the sale of that same tract of land by Travis Bennett to intervenors was executed approximately one year after defendant had filed his reconventional demand. The property descriptions contained in both of these instruments are identical to the one contained in defendant's reconventional demand, in which he alleged that a dispute existed concerning the ownership of that property.
The purpose of a notice of lis pendens is to give effective notice to third persons of the pendency of an action affecting title to, or asserting a mortgage or lien on, immovable property. LSA-C.C.P. Article *1280 3751; L.E.C., Inc. v. Collins, 332 So.2d 565 (La.App. 1 Cir. 1976); Dane v. Doucet Brothers Const. Co., Inc., 396 So.2d 418 (La. App. 4 Cir. 1981). Under the facts and circumstances set out in the preceding paragraphs, we find that the notice of lis pendens filed by plaintiff gave effective notice to third persons that an action affecting title to the entire tract of land described in the act of sale was pending. We further find that the doctrine of estoppel by deed is unavailable to intervenors because the tract of land they attempted to purchase was the same tract of land described in the act of sale.

TRIAL COURT'S AWARD TO DEFENDANT FOR IMPROVEMENTS MADE TO THE LAND
A sale which has been rescinded, voluntarily or otherwise, ceases to exist. There can be no reduction in the consideration which has been paid in connection with a sale which has been rescinded. When a sale is rescinded, the parties are returned as nearly as possible to the situation as it existed prior to the sale. The vendee returns the property to the vendor and the vendor returns the purchase price, subject to whatever adjustments are necessary for the vendee's use of the property during the period he possessed the same. Nugent v. Stanley, 336 So.2d 1058 (La.App. 3 Cir. 1976); Jones v. DeLoach, 317 So.2d 240 (La.App. 2 Cir. 1975); Phillips v. Nereaux, 357 So.2d 813 (La.App. 1 Cir. 1978), rehearing denied, 361 So.2d 228 (La.1978). We are of the opinion that the same principles apply when, as here, it is determined that the contract of sale never came into existence.
Defendant, in his reconventional demand, alleged that he was entitled to recover $7,500.00 for the fill dirt and $400.00 for the culverts. He testified that he paid for these items in cash and by doing certain mechanical work (such as rebuilding starters for trucks, etc.) for Conrad Cathey, the supplier and hauler of those items. Defendant introduced in evidence certain invoices totaling $6,825.96 which he alleged set forth the value of the work he performed for, or the cash he paid to, Conrad Cathey. He testified that this was all he could account for by invoice as his bookkeeping needed improving. He estimated that he had paid Cathey "somewhere around $8,000.00" in cash or work performed. Cathey testified that, "The total bill was somewhere in the neighborhood of... give or take $1,000.00 ... $11,000.00".
The trial court found that Cathey's testimony, adduced without objection, had enlarged the pleadings and that defendant was no longer limited to the $7,900.00 amount specified in his reconventional demand. The trial court then found that $10,500.00 was a fair and reasonable amount for the fill dirt and culverts and it awarded defendant that amount. Plaintiff contends that the trial court committed manifest error in finding that defendant was entitled to recover $10,500.00 from him, and we agree. We reduce the trial court's award to defendant for the fill dirt and culverts to $7,900.00, which we find is the amount that defendant proved he had spent on those items.

ADJUSTMENT OR CREDIT FOR DEFENDANT'S ALLEGED USE OF THE LAND
Plaintiff contends that the trial court committed manifest error in failing to award him any adjustment or credit for defendant's alleged use of the disputed tract of land. Plaintiff bases his contention on the evidence showing that defendant had placed the fill dirt and installed the culverts on the land. The trial court found that the evidence indicated that defendant had made no use of the land, and we agree. We do not believe that the above mentioned acts of the defendant constituted a use of the land such that plaintiff is entitled to an adjustment or credit for it.
Finally, plaintiff contends that the trial court should have held open or re-opened this case for the introduction of additional evidence regarding the amount defendant was entitled to recover for the improvements he made to the property, and the amount of any adjustment or credit which *1281 plaintiff may have been entitled to for defendant's use of the land. The record reveals no motion made by plaintiff to have the trial court do this.
The decision to hold open or re-open a case for the production of additional evidence rests within the sound discretion of the trial judge, which decision will not be disturbed on appeal unless manifestly erroneous. LSA-C.C.P. Articles 1631 and 1632 and Official Comment to LSA-C.C.P. Article 1632; Harrison v. South Central Bell Telephone Company, 390 So.2d 219 (La.App. 3 Cir. 1980), writ denied, 396 So.2d 900 (La.1981); Yeutter v. Lewis, 334 So.2d 728 (La.App. 3 Cir. 1976). We find no manifest error in the trial court's failure to hold open or re-open this case for the introduction of additional evidence.
For the above and foregoing reasons, the judgment of the trial court is amended to award defendant $7,900.00 for the improvements he made to the land and it is affirmed in all other respects.
All costs in the trial court and on this appeal are assessed equally among plaintiff, defendant, and intervenors.
AFFIRMED, AS AMENDED.
CULPEPPER, J., concurs and assigns reasons.
CULPEPPER, Judge, concurring.
I concur in the result but prefer to base the decision on the articles of our Civil Code dealing with error as to the object of a contract, LSA-C.C. Articles 1842-1845.
Plaintiff's petition seeks to reform the written description of the land sold on the grounds that the parties actually agreed to a different one acre of land, i.e., the one acre described in plaintiff's petition. Although the Louisiana Civil Code does not expressly provide for the reformation of written contracts to conform to the actual agreement of the parties, Louisiana jurisprudence has recognized the remedy of reformation, despite the conflict with the parol evidence rule stated in LSA-C.C. Articles 2276-2278. Wilson v. Levy, 234 La. 719, 101 So.2d 214 (1958). However, the person seeking to reform an instrument for mutual error has the burden of proving such error by the clearest and strongest proof. Wilson v. Levy, supra. In the present case, plaintiff has not sustained his burden of proving clearly that the parties agreed to the one acre fronting on the center line of Highway 171, but that the deed, through mutual error, erroneously described the one acre as fronting on the right of way line of the highway. Thus, I agree plaintiff's action to reform should be denied.
In his answer, the defendant-vendee denies that the deed erroneously describes the one acre of land actually agreed to by the parties. In the alternative, and in the event the court determines the parties did not agree to sell and buy respectively the one acre described in the deed, the defendant reconvenes for the return of the portion of the purchase price paid by defendant plus the damages suffered by defendant as a result of the annulment of the sale.
I agree with the majority that the evidence shows there was a misunderstanding between the vendor and the vendee as to the identity of the one acre of land. The vendor thought he was selling one acre fronting on the center line of the highway and running back to a fence which ran along the boundary of other land owned by him. The vendee testified he intended to buy one acre of land fronting on the highway, but that he did not know the exact location of the one acre. Defendant admitted that plaintiff had told him he did not want to sell any portion of the tract of land owned by the plaintiff in the rear. Under the evidence in this case, there was simply no agreement between the vendor and the vendee as to the one acre of land intended to be sold.
Hoff, ERROR IN THE FORMATION OF CONTRACTS IN LOUISIANA: A COMPARATIVE ANALYSIS, 53 Tul.L.Rev. 329 (1979) at pages 348-350, discusses the effect of error in the identity of the object of a contract. The author states there may be some question whether the Louisiana Civil Code is concerned with this type of error. *1282 Articles 1842-1845 appear to be concerned only with errors as to the quality of the object. Nevertheless, the author concludes that error as to the identity of the object should invalidate the contract, since the parties have not agreed. I agree with the following analysis by the author:
"B. Error in Corpore

There is error in corpore when there is misunderstanding as to the identity of the object, rather than as to its qualities.103 It occurs when the seller has one object in mind and the buyer another, but not when they act with respect to the same object but differ as to its characteristics. This error is analytically very close to the notion of dissent, for if parties declare their intentions toward different objects they can scarcely be said to have agreed at all.104 It is interesting to note in this connection the use of the word `dissentio' as Pothier quotes the Digest: `Si ego me fundum emere Cornelianum, tu mini te vendere Sempro nianum putasti, quia in corpore dissensimus emptio nulla est.'105 The Code civil does not mention error in corpore, although it is established doctrine that it is erreur-obstacle.106
There may be some question whether the Louisiana Civil Code is concerned with this type of error. It seems as though the Code, in treating the subject of error as to the object in articles 1842-1845,107 is concerned only with errors as to quality. Article 1842 provides: `Error as to the thing, which is the subject of the contract, does not invalidate it, unless it bears on the substance or some substantial quality of the thing.'108 Articles 1843 and 1844 illustrate the point with Pothier's examples109 of plated silver mistaken for pure:
There is error as to the substance, when the object is of a totally different nature from that which is intended. Thus, if the object of the stipulation be supposed by one or both of the parties to be an ingot of silver, and it really is a mass of some other metal that resembles silver, there is an error bearing on the substance of the object.[110] The error bears on the substantial quality of the object, when such quality is that which gives it its greatest value. `A contract relative to a vase, supposed to be gold, is void, if it be only plated with that metal.'"111
Article 1845 indicates that the preceding articles deal with the problem of mistake as to quality: "Error as to the other qualities of the object of the contract, only invalidates it, when those qualities are such as were the principal cause of making the contract."112 If the articles just quoted are deemed to be concerned with error as to the identity of the object, then article 1881113 would apply,114 with the result that errors in corpore would be voidable and not void. Such a result has been suggested by one writer, who argues: "That the error in corpore entails annulability follows from an argumentum a minori ad majus, since the error as to the identity of the subject-matter is more comprehensive than that relating only to its substance or quality."115 This is curious reasoning, indeed. If valid under the Louisiana Code there is no reason why it should not apply with equal force in French law. It seems more correct analytically and historically to view error in corpore as entailing absolute nullity in Louisiana as in France. This is the conclusion of at least one Louisiana court116 and one institutional writer.117 Interestingly, at least two common law commentators have similarly analyzed the problem, citing Raffles v. Wichelhaus118 as an example of error in corpore.119 P.E. Corbett wrote:
The Roman rule of nullity ab initio in cases of mistake as to the identity of the object survives in the law of France and of Quebec, though not specifically mentioned in either code. The English Courts will not admit parol evidence against the terms of a written contract on the ground of such error unless those terms are ambiguous, as where they speak of a ship "Peerless" and there are two ships of that name. But the substantive law is the same, since, *1283 when evidence is admissible, the transaction is held null.120"
I agree with the majority in all other respects.
For the reasons assigned, I concur.
NOTES
[1] The instrument was recorded on page 336 of Vol. 292 of the Conveyance Records of Sabine Parish and on page 719 of Vol. 117 of the Mortgage Records of said parish and bears registration number 236687.
[2] Overruled on other grounds in Clayton v. Rickerson, 160 La. 771, 107 So. 569 (1926).